IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: _____ |
| | ) |
| DOMINION ENERGY, Inc., | ) |
| DOMINION ENERGY BRAYTON | ) |
| POINT, LLC, and | ) |
| KINCAID GENERATION, LLC, | ) |
| | ) |
| | ) |
| Defendants. | ) |

The United States of America ("United States"), by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), alleges as follows:

**NATURE OF THE ACTION**

1.  This is a civil action brought by the United States against Dominion Energy, Inc., and Kincaid Generation, LLC ("Dominion" or "Defendants") pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7413(b) and 7477, for injunctive relief and assessment of civil penalties for violations of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92, Title V of the Act, 42 U.S.C. § 7661-7661(f), and the federally approved and enforceable State Implementation Plan ("SIP") adopted by the State of Illinois approved by EPA pursuant to Section 110 of the Act, 42 U.S.C. § 7410. Dominion Energy Brayton Point, LLC, is a party necessary for complete relief in this

action pursuant to Rule 19(a) of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651.

2. Defendants modified, and thereafter operated, certain coal-fired electricity generating units without first obtaining appropriate permits authorizing the modification and subsequent operation of the units, and without installing and employing the best available control technology ("BACT") to control emissions of sulfur dioxide ("$SO_2$"), nitrogen oxides ("$NO_x$"), and Particulate Matter ("PM") as required by the Act and applicable regulations.

3. As a result of Defendants' operation of the unlawfully modified electricity generating units following such unlawful modifications, large amounts of $SO_2$, $NO_x$, and PM pollution each year have been, and still are being, released into the atmosphere.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to CAA Sections 113(b) and 167, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, 1355, 1367, and 1651.

5. Venue is proper in this District pursuant to CAA Sections 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because violations that are the subject of this Complaint occurred and are occurring within this District.

## NOTICES

6. U.S. EPA issued a Notice and Finding of Violation ("NOV") on April 16, 2009, with respect to alleged violations of the CAA, as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

7. The 30-day period between issuance of the NOV and commencement of a civil action, required under CAA Section 113, 42 U.S.C. § 7413, has elapsed.

8.  The United States is providing notice of the commencement of this action to the appropriate State air pollution control agencies in Illinois, Indiana, and Massachusetts, as required by CAA Section 113(b), 42 U.S.C. § 7413(b).

## THE DEFENDANTS

9.  Defendant Dominion Energy, Inc. is a Virginia Corporation registered to do business in Illinois, and is the parent corporation of, *inter alia*, Dominion Energy Brayton Point, LLC and Kincaid Generation, LLC.  Dominion Energy Inc. and its subsidiary Kincaid Generation, LLC own and/or operate the Kincaid Power Station located in Kincaid, Illinois. Dominion Energy Inc. and its subsidiary Dominion Energy Brayton Point, LLC own and/or operate the Brayton Point Power Station located in Somerset, Massachusetts.  Dominion Energy, Inc. also owns the State Line Power Station, located in Hammond, Indiana.

10.  Each Defendant is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

## STATUTORY BACKGROUND

11.  The Clean Air Act is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

### The National Ambient Air Quality Standards

12.  Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of U.S. EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to CAA Section 108, 42 U.S.C. § 7408.  The primary NAAQS are intended to be adequate to protect public health with an adequate margin of safety, and the

secondary NAAQS are intended to be adequate to protect public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

13. Under CAA Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable."

14. At all times relevant to the violations alleged in this action, the Kincaid Power Station was located in an area that had been designated as being in attainment with the NAAQS for $SO_2$, $NO_x$, and PM.

15. Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to U.S. EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

The Prevention of Significant Deterioration Requirements

16. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. These provisions are referred to collectively as the "PSD program," which is part of the overall New Source Review ("NSR") program. The NSR program also includes requirements for areas

designated as being in nonattainment with the NAAQS standards, known as the Nonattainment NSR program, which is set forth at Part D of the Title I of the Act, 42 U.S.C. §§ 7501-7515.

17.   Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program.

18.   A state may comply with Section 161 of the Act by having its own PSD regulations approved as part of its SIP by U.S. EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.

19.   If a state does not have a PSD program that has been approved by U.S. EPA and incorporated into the SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 shall be incorporated by reference into the SIP.  40 C.F.R. § 52.21(a).

20.   On August 7, 1980, EPA found that the Illinois SIP lacked approvable PSD provisions, and incorporated by reference the provisions of 40 C.F.R. § 52.21(b) through (w) into the Illinois SIP at 40 C.F.R. § 52.738 (1980).  45 Fed Reg. 52,676, 52,741 (Aug. 7, 1980).  The regulations appearing at 40 C.F.R. § 52.21 were incorporated into and part of the Illinois SIP at the time of the violations alleged in this case.

21.   Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as in "attainment," unless a permit has been issued that comports with the requirements of CAA Section 165 and the facility employs BACT for each pollutant subject to regulation under the Act that is emitted from the facility.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("Btus") per hour heat input and that emit, or have the potential to emit, one hundred tons per year or more of any pollutant, to be "major emitting facilities."

22.     Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(c), defines "construction" as including "modification" (as defined in CAA Section 111(a)). "Modification" is defined in CAA Section 111(a), 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

23.     Applicable provisions in the PSD regulations in the Illinois SIP have at all relevant times prohibited construction of a major modification at a major stationary source located in an area designated as unclassifiable or in attainment without, among other things, obtaining a PSD permit, undergoing a BACT determination, and applying BACT pursuant to such determination for each relevant pollutant. 40 C.F.R. §§ 52.21(i), (j). The definitions contained in the PSD regulations have at all relevant times defined "major modification" to include "any physical change in or change in the method of operation of a major stationary source" that would result in a "significant net emissions increase" of a regulated pollutant. 40 C.F.R. § 52.21(b)(2)(i). These regulations have at all relevant times defined "major stationary source" to include fossil fuel-fired steam electric plants of more than 250 million BTUs per hour heat input. 40 C.F.R. § 52.21(b)(1)(i). "Significant" means a rate of emissions that would equal or exceed any of the following rates for the following pollutants: $NO_x$, 40 tons per year; $SO_2$, 40 tons per year; PM, 25 tons per year. 40 C.F.R. § 52.21(b)(23)(i).

<u>Title V</u>

24.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD and SIP requirements, are collected in one place.

25.     A "major source" for purposes of Title V is defined, among other things, as a source with a potential to emit greater than 100 tons per year of any criteria pollutant. 42 U.S.C. § 7661(2).

26.     Illinois' Title V operating permit program was granted interim approval by EPA on March 7, 1995 (60 Fed. Reg. 12,478) and final approval on December 4, 2001 (66 Fed. Reg. 62,946). Illinois' Title V permit program is codified at 415 ILCS 5/39.5.

27.     Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Illinois Title V operating permit program have at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued under Title V.

28.     Section 503(c) of the Act, 42 U.S.C. § 7661b(c), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and the Illinois Title V program, have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

29.     Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.2, and the Illinois Title V operating permit program regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act and the requirements of the applicable SIP, including any applicable PSD requirement to comply with an emission rate that meets BACT.

**ENFORCEMENT PROVISIONS**

30. Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with CAA Section 113(b) whenever, on the basis of any information available, the Administrator finds that any person has violated, or is in violation of, any other requirement or prohibition of, among other things: (1) the PSD requirements of CAA Section 165(a), 42 U.S.C. § 7475(a); (2) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (3) the Illinois SIP or any permit issued thereunder.

31. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes EPA to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each violation occurring on or after January 31, 1997; $32,500 per day for each violation occurring after March 15, 2004; and $37,500 per day for each such violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, among other things, the requirements or prohibitions described in the preceding paragraph.

32. 40 C.F.R. § 52.23 provides, among other things, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to CAA Section 113, 42 U.S.C. § 7413.

33. Section 167 of the Act, 42 U.S.C. § 7477, authorizes EPA to initiate an action for injunctive relief, as necessary, to prevent the construction, modification, or operation of a major emitting facility that does not conform to PSD requirements.

## GENERAL ALLEGATIONS

34. At all times pertinent to this civil action, Defendants Dominion Energy Inc. and Kincaid Generation, LLC have been the owner and/or operator of the Kincaid Power Station located in Kincaid, Illinois. The Kincaid Power Station consists of two coal-fired boilers and related equipment: Kincaid Units 1 and 2.

35. At all times pertinent to this civil action, the Kincaid Power Station has been a "major emitting facility" and a "major stationary source," within the meaning of the Act and the Illinois SIP for $NO_x$, $SO_2$, and PM.

36. At all times pertinent to this civil action, the Kincaid Power Station has been a "major source" within the meaning of Title V of the Act and the Illinois Title V program.

## FIRST CLAIM FOR RELIEF

(PSD Violations)

37. Paragraphs 1 – 36 are realleged and incorporated herein by reference.

38. Defendants commenced construction of one or more major modifications, as defined in the Act and Illinois SIP, at the Kincaid Power Station. Such major modifications included one or more physical changes or changes in the method of operation, including, but not necessarily limited to (1) complete refurbishment of the air heater at Kincaid Unit 2 in 1994 to remove a derating of the unit's capacity, and (2) the complete overhaul of the boilers at Kincaid Units 1 and 2 in 1998 and 1999, including replacement of cyclones, coal burners, boiler walls,

and furnace floors on both units. Such modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of $NO_x$, $SO_2$, and/or PM.

39. Defendants did not comply with the PSD requirements in the Act and Illinois SIP with respect to the modified Kincaid Power Station. Among other things, Defendants failed to obtain PSD permits for the construction and operation of the modified Kincaid units. Defendants did not undergo a BACT determination, and failed to install and operate the best available control technology for control of $NO_x$, $SO_2$, and PM pursuant to such determination, as required by the Act and the Illinois SIP for each modification.

40. Defendants have violated and continue to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a) and the PSD provisions of the Illinois SIP at the Kincaid Power Station. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

41. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and civil penalties of up to $32,500 for each day of violation occurring on or after March 15, 2004; and $37,500 for each day of violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SECOND CLAIM FOR RELIEF

(Title V Violations)

42. Paragraphs 1 through 41 are realleged and incorporated herein by reference.

43. As set forth above, Defendants modified Kincaid Power Station Units 1 and 2 under the PSD regulations in the Illinois SIP. As a result, such modifications triggered the requirements to, *inter alia,* undergo a BACT determination for each unit, to obtain a PSD permit establishing emissions limitations that meet BACT requirements pursuant to such a

determination, and to operate in compliance with such limitations. Defendants failed to satisfy these requirements.

44. Subsequently, Defendants failed to submit a complete application for a Title V operating permit for the Kincaid Power Station and identify all applicable requirements, accurately certify compliance with such requirements, and contain a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a determination under PSD). Defendants failed to obtain a proper or adequate Title V operating permit for the Kincaid Power Station that contained emission limitations for $NO_x$, $SO_2$, and PM that met BACT. Defendants thereafter operated the Kincaid Power Station without meeting such limitations and without having a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance. Defendants' conduct violated Sections 502(a), 503(c), and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V operating permit program regulations. Unless restrained by an order of this Court, these and similar violations will continue.

45. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendants to injunctive relief and civil penalties of up to $32,500 for each day of violation occurring on or after March 15, 2004; and $37,500 for each day of violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, the United States requests that this Court:

1. Permanently enjoin Defendants from operating the Kincaid Power Station, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2 Order Defendants to apply for New Source Review permits under Part C and/or D of Title I of the Clean Air Act, as appropriate, that conform with the permitting requirements in effect at the time of the permitting action, for each pollutant in violation of the New Source Review requirements of the Clean Air Act;

3. Order Defendants to remedy their past violations by, among other things, requiring Defendants to install and operate the best available control technology or meet the lowest achievable emission rate at the units subject to this action, for each pollutant in violation of the New Source Review requirements of the Clean Air Act;

4. Order Defendants to apply and/or amend applications for a permit that is in conformity with the requirements of the Title V program;

5. Order Defendants to achieve, maintain, and demonstrate compliance with the CAA and applicable requirements established thereunder, including provisions of the Title V permit and Illinois SIP requirements described above;

6. Order Defendants to conduct audits of their operations to determine if any additional modifications have occurred that would require them to meet New Source Review requirements, and report the results of these audits to the United States;

7. Order Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

8.     Assess a civil penalty against Defendants of up to $32,500 per day for each violation of the Clean Air Act and applicable regulations occurring after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009;

9.     Award Plaintiff its costs of this action; and,

10.    Grant such other relief as the Court deems just and proper.

Dated: April 1, 2013

          Respectfully submitted,


*s/ Ignacia S. Moreno*_____
IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division


*s/ Jason A. Dunn*_____
JASON A. DUNN
Senior Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-1111
Facsimile: (202) 616-6583
Jason.Dunn@usdoj.gov


JAMES A. LEWIS
United States Attorney


By:    *s/ Gerard A. Brost*_____
       Gerard A. Brost, IL Bar 3125997
       Assistant United States Attorney
       One Technology Plaza
       211 Fulton St., Ste. 400
       Peoria, Illinois 61602
       Telephone: 309 / 671-7050
       Email: Gerard.brost@usdoj.gov

OF COUNSEL:        SEEMA KAKADE
Attorney-Advisor
United States Environmental
 Protection Agency
1200 Pennsylvania Ave., N.W. (2242A)
Washington, DC 20460

NICOLE WOOD-CHI
Associate Regional Counsel
United States Environmental
 Protection Agency, Region 5
77 W. Jackson Boulevard
Chicago, IL 60604-3590

STEVEN VIGGIANI
Senior Enforcement Counsel
United States Environmental
 Protection Agency, Region 1
Mail Code OES04-3
5 Post Office Square, Suite 100
Boston, MA 02109-3912