# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **CITY OF FALL RIVER,** | ) | |
| | ) | |
| **Proposed Plaintiff-Intervenor** | ) | |
| | ) | |
| **v.** | ) | **No. 13-cv-03086** |
| | ) | |
| **DOMINION ENERGY, INC.,** | ) | |
| **BRAYTON POINT ENERGY, LLC,** | ) | |
| **KINCAID GENERATION, LLC, and** | ) | |
| **EQUIPOWER RESOURCES CORP.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE:**

After the Court entered a Consent Decree in this case, the City

of Fall River, Massachusetts filed a Motion to Intervene (d/e 13 *and

revised as* d/e 25), a Motion for a Temporary Restraining Order

and/or a Preliminary Injunction (d/e 15), and a Motion to Enforce

and/or Modify the Consent Decree (d/e 17). Dominion Energy, Inc.

later filed a Motion for Sanctions (d/e 38). After considering the

arguments of the parties and the City of Fall River, the Court

DENIES all of these pending motions.

## I.    BACKGROUND

### A. The Consent Decree Signed by the United States and Dominion Resolved Civil Claims Against Power Plants in Illinois, Indiana, and Massachusetts.

One section of a 96-page Consent Decree negotiated and

signed by Plaintiff United States ("United States") and Dominion

Energy, Inc. ("Dominion"),[1] Dominion Brayton Point, LLC, and

Kincaid Generation, LLC that this Court entered on July 18, 2013

has incited a vigorous dispute that led to the four currently pending

motions.  Under the Consent Decree, Dominion agreed to spend

$9.75 million to implement environmental mitigation projects in

specific locations affected by Defendants' power plants in Kincaid,

Illinois; Hammond, Indiana; and Brayton Point, Massachusetts.

Consent Decree, d/e 3, § IX, ¶ 109.  These projects included the

---

[1] While not an original party to the instant action or the Consent Decree, EquiPower Resources Corp. replaced Dominion Energy as the entity responsible for executing obligations in the Consent Decree related to the Brayton Point and Kincaid plants when EquiPower Resources Corp. acquired those two plants after the Court entered the Consent Decree.  See Notice Related to Consent Decree, d/e 11 at 1-2 (noting also the name change of "Dominion Energy Brayton Point LLC" to "Brayton Point Energy, LLC").  Because Dominion retained sole responsibility to complete the environmental projects outlined in the Consent Decree, Dominion is the party responding to Fall River's currently pending Motions.  See id., App. I, ¶ 4.

"Northeast Clean Energy and Clean Diesel Projects" (the "Northeast Projects"). <u>Id.</u>, App. A., § XI.

For the Northeast Projects, Dominion was required to "consult[ ]" with the Town of Somerset, Massachusetts, where Dominion's Brayton Point power plant was located, and the City of Fall River, Massachusetts, which lies within 2.5 kilometers of the Brayton Point plant, about proposing projects. <u>Id.</u> ¶ A; Fall River Memorandum, d/e 26 at 3. Dominion was then required to submit "one or more" project proposals to the U.S. Environmental Protection Agency ("EPA") for approval to implement specified types of projects in "either or both municipalities." <u>Id.</u> The Consent Decree also stated that although the "Parties' expectation" was that half of the maximum $1.6 million allotted for the Northeast Projects "will be spent in Somerset . . . the final distribution will depend on the Projects (and their costs) that can be proposed and implemented within the time frames and other requirements set out in this Appendix." <u>Id.</u> ¶ B. The Consent Decree also required Dominion to submit all of the project proposals—not only the Northeast Projects proposals—to the EPA for approval within 120 days of the Court entering the Consent Decree. <u>Id.</u> § II, ¶ A.

## B. The Complaint Filed by the United States Alleged Violations of the Clean Air Act at the Kincaid Power Station in Illinois.

On April 2, 2013, the United States brought a civil enforcement action against Dominion and its subsidy Kincaid Generation, LLC, alleging that Dominion made unpermitted modifications to the Kincaid Power Station, in violation of the Prevention of Significant Deterioration provisions of the Clean Air Act ("CAA"), Title V of the CAA, and the State Implementation Plan ("SIP") adopted by Illinois and approved by the EPA.  See Complaint, d/e 1.  These provisions all seek to reduce the emission of pollutants such as nitrogen oxides, sulfur dioxide, and particulate matter harmful to human health and the environment.  See Government's Response, d/e 32-1 at 2.  The United States joined Dominion Energy Brayton Point, LLC, which operated the Brayton Point Power Station in Somerset, Massachusetts, as a necessary party under Federal Rule of Civil Procedure 19(a).  See Complaint, d/e 1 ¶ 1.

The scope of the Consent Decree was much broader than the United States' Complaint here.  While the Complaint alleged only "modification" violations at the Kincaid Plant in Illinois, the Consent

Decree resolved *all* civil claims of the United States against Dominion for unpermitted modifications made at the Kincaid, Brayton Point, and State Line power plants.  Compare id. ¶¶ 37-45 with Consent Decree, d/e 3 ¶ 121.  The Consent Decree also resolved all past claims by the United States arising from "opacity" violations at the State Line Station in Hammond, Indiana.  Consent Decree, d/e 1 ¶ 121.  Notably, before the Court entered the Consent Decree on July 18, 2013, the United States clarified that the Consent Decree did *not* resolve alleged violations of opacity standards at the Brayton Point power plant in Somerset, Massachusetts.  The United States made this clarification in response to a question from a group of environmental organizations that sued Dominion Energy Brayton Point, LLC for opacity violations under the CAA and the Massachusetts SIP.  See U.S. Memorandum, d/e 7-1 at 19-20.  During the public-comment period before the Consent Decree was entered, this group of organizations (consisting of the Conservation Law Foundation, Clean Water Action, Toxics Action Center, and the Coalition for Clean Air South Coast) (the "Massachusetts Plaintiffs") inquired how the Consent Decree would affect their pending lawsuit.  Id. at

19.  In response, the United States explained that although the Consent Decree resolves opacity claims at the State Line plant in Indiana, the "express terms of the Consent Decree . . . do not purport to resolve any opacity violations at Brayton Point." Id. at 20.

### C. The Consent Decree Named Fall River as One of Two Municipalities That Could Benefit from the Environmental Mitigation Projects.

On July 11, 2013, less than two weeks after the United States moved to enter the Consent Decree and one week before the Court actually entered the Consent Decree on July 18, 2013, representatives from Dominion Energy met with the employees of Fall River who were to be involved in preparing proposals for the Northeast Projects.  See Aff. of Kenneth Pacheco, d/e 14-2 ¶ 3.  At this meeting, Dominion gave Fall River "Proposal Guidelines" requiring Fall River and Somerset to submit proposals to Dominion by August 1, 2013.  See Aff. of James Smith, 29-3 ¶ 5.  The Proposal Guidelines also stated that Dominion's deadline to submit proposals to the EPA was 120 days after the Court entered the Consent Decree.  Proposal Guidelines, d/e 30-1 at 9.  The Proposal Guidelines were dated June 24, 2013, and stated in a footnote that

"the United States soon will move to enter the Consent Decree, which will then take effect when the Court enters it." Id. The subsequent entry of the Court's Consent Decree on July 18, 2013 set Dominion's 120-day deadline to November 14, 2013. See Fall River Memorandum, d/e 26 at 7. Fall River contends Dominion never told Fall River that the Court had entered the Consent Decree triggering the 120-day deadline. Id.

Somerset submitted a proposal to Dominion Energy on August 1, 2013, the date of the deadline. See Dominion Memorandum, Att. E, d/e 29-2 at 25. On December 17, 2013, Fall River officials read in a local newspaper that Somerset was expected to receive the full $1.6 million of funding for the Northeast Projects because Fall River had failed to submit a proposal. Aff. of Christie DiOrio, d/e 14-1 ¶ 12. The next day, Fall River submitted a proposal, exceeding Dominion's deadline to submit proposals to the EPA by more than one month. See Aff. of Kevin Hennessy, d/e 29-2 ¶ 23. Dominion told Fall River that Dominion had to refuse Fall River's proposal because Dominion had already submitted the selected plans to the EPA and could not extend the 120-day deadline imposed in the Consent Decree. See Fall River Memorandum, d/e 16-5 at 2.

Fall River responded by filing a Motion for a Temporary Restraining Order and/or Preliminary Injunction, a Motion to Intervene, and a Motion to Enforce and/or Modify the Consent Decree in this Court on January 14, 2014. Pursuant to Federal Rule of Civil Procedure 24(c), Fall River attached a proposed complaint to the Motion to Intervene, alleging claims against Dominion's Brayton Point plant identical to those in the complaint filed by the Massachusetts Plaintiffs in their Massachusetts lawsuit: opacity and smoke emission violations of the Massachusetts SIP, violations of monitoring requirements of the Massachusetts SIP, and violations of acid rain monitoring requirements. Compare Fall River Proposed Complaint in Intervention, d/e 31-1 with Complaint, d/e 1 in Conservation Law Foundation, Inc., Clean Water Action, and Toxics Action Center v. Dominion Energy Brayton Point, LLC, No. 13-10346 (D. Mass. filed Feb. 22, 2013).

On January 15, 2014, at a telephone hearing on the Motion for a Preliminary Injunction, the United States agreed not to conduct further review of the plans Dominion had submitted for the Northeast Projects until the Court resolved Fall River's Motion to Intervene. See Minute Entry dated Jan. 15, 2014 and Joint

Stipulation, d/e 22. The Court also set a briefing schedule at the hearing that allowed Fall River to revise any of its motions and reply to the responses to Fall River's motions. See Order, d/e 19. Dominion Energy later filed a Motion for Sanctions against Fall River (d/e 38). On April 7, 2014, despite some technical difficulties, the Court held an interstate video hearing on Fall River's Motion to Intervene.

Dominion and Fall River argue at length about why Fall River's proposal was tardy. In short, Fall River blames Dominion for failing to tell Fall River when the Court entered the Consent Decree triggering Dominion's 120-day deadline. Dominion blames Fall River for not submitting a timely proposal. While this factual disagreement may bear on the balancing test the Court conducts when considering a Motion for a Temporary Restraining Order and/or Preliminary Injunction, the disagreement is irrelevant to the Motion to Intervene. Further, the Court's DENIAL of the Motion to Intervene moots the Motion for a Preliminary Injunction and the need to resolve who was at fault for Fall River's untimely submission.

## II.   ANALYSIS

## 1. Fall River Seeks to Intervene under Federal Rule of Civil Procedure 24.

Federal Rule of Civil Procedure 24 provides three avenues proposed plaintiff–intervenors may take to intervene in a federal case.  Because the citizen-suit provision of the CAA blocks Fall River from taking any of these routes to intervention, the Court DENIES the Motion to Intervene.

### A. Fall River Cannot Intervene Under Fed. R. Civ. P. 24(a) Because The Clean Air Act Does Not Provide Fall River with an Unconditional Right to Intervene.

Under Rule 24(a)(1), the court <u>must</u> permit anyone to intervene who has an unconditional right to intervene under federal statute and who files a timely motion to intervene.  The CAA allows citizens to prosecute violations of the CAA by bringing civil actions in federal courts.  42 U.S.C. § 7604(a).  However, a citizen cannot sue under this "citizen-suit provision" of the CAA if the state or federal government "has commenced or is diligently prosecuting" violations of "the standard, limitation, or order" of the CAA the

citizen also wishes to enforce.[2]  Id. at § (b)(1)(B).  This section of the citizen-suit provision (the "intervention section") ensures that courts are not overburdened with citizen suits that are duplicative of ongoing governmental actions under the CAA.  Although the intervention section serves to restrict citizen suits when the state or federal government has started to prosecute "any such action," the CAA grants the citizens a right to intervene in the government's case "as a matter of right."  Id.  Further, the citizen-suit provision of the CAA also includes a venue provision, which states that "[a]ny action respecting a violation by a stationary source of an emissions standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located."  Id. at § (c)(1) (emphasis added).

The United States and Dominion argue Fall River must allege Dominion violated the same "standard, limitation, or order" of the CAA that the United States alleged in its Complaint in order to obtain this unconditional right to intervene.  Fall River disagrees

---

[2] "**(b)** No action may be commenced—**(B)** if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right."

but concedes that the claims in its proposed complaint, which allege violations of opacity, smoke, and monitoring requirements at the Brayton Point plant, are not identical to claims in the United States' Complaint, which involve violations of modifications requirements at the Kincaid plant.

Relying on a federal district court case from Colorado, United States v. Kerr-Mcgee Corp., Fall River argues that the proposed intervenor's claims do not need to be the same the United States' claims. Rather, Fall River's claims need only stem from the "same nexus of facts and law" as the claims the United States alleges in its Complaint. Fall River Reply, d/e 44 at 2. Kerr-Mcgee does not persuade this Court that Fall River has a right to intervene based on its proposed complaint.

In United States v. Kerr-Mcgee Corp., a Colorado district court allowed a group of organizations to intervene in a case brought by the United States under the CAA where the first claim in the group's proposed two-count complaint, which alleged that the defendant failed to install oxidation catalysts, mirrored the United States' complaint, and the second claim alleged that the failure to install oxidation catalysts also breached the defendant's operating

permits.  2008 U.S. Dist. LEXIS 24494, at *2, n.2 (D. Colo. Mar. 26, 2008).  Because of the many differences between Kerr-Mcgee and the present action, Kerr-Mcgee does not actually support Fall River's argument.

In Kerr-Mcgee, one of the counts in the proposed intervenor's complaint was identical to one of the counts in the United States' complaint, so Kerr-Mcgee could indisputably intervene under the CAA.  Additionally, the conduct underlying the second count in the proposed intervenor's complaint in Kerr-Mcgee was the same as the conduct alleged in the intervenor's first claim and thus, the United States' mirrored claim.

In contrast to Kerr-Mcgee, none of the conduct underlying Fall River's proposed complaint forms the basis of the Complaint in this case.  Even if Kerr-Mcgee stands for the proposition Fall River contends it does—that the citizen-suit provision allows intervention in a governmental action when citizens assert the "same nexus of facts and law"—Kerr-Mcgee does not support Fall River's intervention because Fall River's proposed complaint is based on different facts altogether.

Although Fall River briefly cited <u>U.S. v. Duke Energy Corp.</u>, 171 F. Supp. 2d 560, 565 (M.D.N.C 2001) in the Reply to Dominion's Response to the Motion to Intervene, counsel for Fall River repeatedly relied on <u>Duke Energy</u> during the video hearing. <u>See</u> Fall River Reply, d/e 44 at 2. However, <u>Duke Energy</u> does not support Fall River's position. The issue in <u>Duke Energy</u> was whether the defendant's failure to obtain permits necessary to modify a power plant fell under the definition of an "emission standard or limitation" that could be enforced under the CAA's citizen-suit provision. 171 F. Supp. 2d at 562–65. Because the district court determined that the failure to obtain the permits could be prosecuted under the citizen-suit provision, a group of public-interest organizations had an "unconditional right to intervene" in the United States' case against the power plant. <u>Id.</u> at 565.

If Fall River, like the organizations that sought intervention in <u>Duke Energy</u>, were in fact alleging the same violations as the United States in this case, <u>Duke Energy</u> may have been applicable. At best, <u>Duke Energy</u> demonstrates how the intervention clause of the

citizen-suit provision applies when the claims of the intervenors and the United States are identical.

Whether claims of prospective intervenors must mirror claims of the United States under the citizen-suit provision of the CAA is perhaps seldom addressed in case law because the plain language of the statute so clearly requires uniformity. This intervention section serves to grant certain third parties a right to intervene and yet restricts the ability of third parties to bring their own independent actions under the CAA. Various courts have simply assumed that the intervention section applies when a citizen and the government are seeking to enforce the <u>same</u> limitation, standard, or order of the CAA.

When analyzing the intervention section of the citizen-suit provision of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(B)—a verbatim reproduction of the CAA's intervention section—a Connecticut federal district court injected the word "same" before the phrase, "standard, limitation, or order," to express the understanding that the intervention section applied when the government's and third party's claims were identical. The court granted the defendant's motion to dismiss after finding that the

State of Connecticut was "diligently prosecuting" an enforcement suit against the defendant "to require compliance with the [same] standard, order or limitation" plaintiff was seeking to enforce. Conn. Fund for the Env't v. Contract Plating Co., Inc., 631 F. Supp. 1291, 1294 (D. Conn. 1986).

Similarly, when a district court in the Eastern District of Texas reviewed the CAA's intervention statute, the court noted that if a citizens' group was seeking to prosecute the "same CAA standard, limitation, or order" that the State of Texas had started to diligently prosecute, the court would lack jurisdiction over the citizen's independent action. Glazer v. Am. Ecology Envtl. Servs. Corp., 894 F. Supp. 1029, 1035 (E.D. Tex. 1995). On the other hand, if the alleged violations in citizens' and state's suits involved a "different CAA standard, limitation or order" or were based on "different activity," the intervention section would not apply to prohibit the plaintiff's cause of action. Id. To determine whether the "same" violations were alleged in both suits, the district court needed only to compare the pleadings in both cases. Id. ("Certainly, Congress did not intend to overburden the courts by requiring protracted litigation regarding the similarities between the state's action and

the citizen suit.").  Further, a court from the District of Maryland relied on Glazer to find that the EPA's enforcement of a single standard against an emission source did not bar citizen suits seeking to enforce different standards against the same emission source.  See Dodge v. Mirant Mid-Atl., LLC, 732 F. Supp. 2d 578, 585–86 (D. Md. 2010).

This Court agrees with the Contract Plating, Glazer, and Dodge courts' interpretation of the plain language of the intervention section of the CAA.  The Court notes that Congress chose to use the definite article "the" in that phrase rather than "any" or "a."  The similarly worded citizen-suit provision of the Resource Conservation and Recovery Act ("RCRA") bars citizen suits when a federal or state entity is enforcing compliance with "such permit, standard . . . or order."  42 U.S.C. § 6972(b)(1)(B); see Adkins v. VIM Recycling, Inc., 644 F.3d 483, 494 (7th Cir. 2011) (finding that an earlier governmental action would prohibit a plaintiff's citizen suit under the RCRA "if it sought to require compliance with the same requirements that the plaintiffs seek to enforce in this suit") (emphasis added).  No doubt this language more clearly requires compliance with the same standard or order.

However, the word "the" is included in the intervention section of the CAA for good reason: if citizens could intervene in cases brought by the United States when alleging CAA violations different from those of United States, citizens would be barred from bringing independent actions against defendants for violations the United States chose not to prosecute. Fall River's argument to allow intervention based on allegations that differ from those of the United States would essentially gut the citizen-suit provision.

The Ninth Circuit case, United States v. Stone Container Corp., 196 F.3d 1066 (9th Cir. 1999), provides an example of how the CAA's citizen-suit provision works to ensure citizens can act as "private attorney generals" to enforce violations the United States does not pursue. In Stone Container, a citizens' group filed a 21-count complaint against a defendant for violating the CAA. 196 F.3d at 1067. The United States then filed a separate suit against the same defendant. Id. The citizens' group intervened in the governmental suit based on three of the counts in its own complaint that mirrored three counts in the United States' suit. Id. at 1068. After the court allowed the group to intervene, the group dismissed the three identical violations from its own suit and proceeded in the

independent case on the remaining 18 violations that the United States had not sought to prosecute.  <u>Id.</u>  Consent decrees were then entered in both cases: one between the United States and the defendant, and the other between the citizens' group and the defendant in the independent action.  <u>Id.</u>

Unlike the intervenors in <u>Stone Container</u>, Fall River is seeking intervention, rather than an independent action, to prosecute opacity and monitoring violations of the CAA that differ from the United States' allegations of unpermitted modifications. Therefore, Fall River does not have a statutory right to intervene and cannot intervene under Federal Rule of Civil Procedure 24(a)(1).

### B. Fall River Does Not Meet the Requirements for Permissive Intervention Under Fed. R. Civ. P. 24(b).

Fall River does not argue intervention under Federal Rule of Civil Procedure 24(a)(2), which requires a proposed intervenor to show that disposing of an action would impair its ability to guard a protectible interest.  Rather, Fall River seeks permissive intervention under Rule 24(b):

(1) *In General.* On timely motion, the court may permit anyone to intervene who:

(b) has a claim or defense that shares with the main action a common question of law or fact.

The Seventh Circuit requires that permissive intervenors file a timely motion and show 1) a question of law or fact in common with the main action and 2) independent jurisdiction. See, e.g., Ligas ex rel. Foster v. Maram, 478 F.3d 771, 775 (7th Cir. 2007); Flying J, Inc. v. Van Hollen, 578 F.3d 569, 573 (7th Cir. 2009) ("Like anyone who wants to maintain an action in federal court, the [proposed intervenor] has to have standing in the Article III sense . . . ."). Even if these requirements are met, the Court has discretion whether to allow the intervention and should consider the impact of intervention on all of the parties. Ligas, 478 F.3d at 775.

The differences in the violations alleged in Fall River's and the United States' complaints demonstrate that Fall River does not share a question of law or fact with the present action. Indeed, Fall River does not suggest a common question of law or fact in the Motion to Intervene. Fall River does reference the "common questions of law and fact that surround the harms suffered by Fall River based on the emissions at issue in this Action" when replying to Dominion's and the United States' Responses to the Motion to

Enforce and/or Modify the Consent Decree.  See Fall River Reply, d/e 41 at 4.  However, the Complaint in this cause of action involves only alleged violations at the Kincaid power plant in Illinois.  And while the Consent Decree resolves some claims against the Brayton Point plant, nowhere in its four corners does it purport to resolve the opacity and monitoring claims Fall River alleges in its proposed complaint.  See Alliance to End Repression v. City of Chicago, 742 F.2d 1007, 1011 (7th Cir. 1984) ("[T]he scope of a consent decree must be discerned within its four corners.") (citing United States v. Armour & Co., 402 U.S. 673, 682 (1971) (internal citations omitted).

Additionally, the Seventh Circuit's second requirement for intervention—independent jurisdiction—is another insurmountable obstacle Fall River cannot clear because of the venue and notice requirements of the CAA's citizen-suit provision.  To independently pursue the claims in the proposed complaint, Fall River would also have to satisfy the notice requirement of the citizen-suit provision, which means Fall River would have to give the EPA Administrator, the State of Massachusetts, and the proper Defendant 60 days' notice before filing Fall River's complaint.  See 42 U.S.C.

§ 7604(b)(1).  Nothing in the record indicates Fall River gave such notice.

Even more problematic, however, is the venue requirement of the citizen-suit provision of the CAA.  <u>See</u> 42 U.S.C. § 7604(c)(1). The Seventh Circuit has recognized the contrast of the CAA, one of several statutes "with 'special' i.e. mandatory, venue provisions which are explicit in limiting venue. . . ." against other statutes that "allow permissive venue."  <u>In re VMS Sec. Litig.</u>, 21 F.3d 139, 144 (7th Cir. 1994).  The CAA clearly states that "any action respecting a violation by a stationary source of an emission standard . . . may be brought only in the judicial district in which such source is located."  42 U.S.C. § 7604(c)(1).

Fall River argues that venue is proper in "this District  . . . because violations that are the subject of the Complaint occurred in this District."  Fall River Motion to Intervene, d/e 26 at 16.  The "Complaint" Fall River cites to, however, is the United States' Complaint, not Fall River's proposed complaint.  <u>See</u> <u>id.</u> (citing Docket Entry "1," which is the Complaint filed by the United States).  And Fall River's proposed complaint—*not* the Complaint initiating the underlying suit—must be the basis of independent

jurisdiction.  See FED. R. CIV. P. 24(c) (stating that a motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought").

In a footnote to the venue paragraph of Fall River's proposed complaint, Fall River asserts that this Court has jurisdiction over Fall River's claims because this Court entered a Consent Decree that resolved alleged claims against the Brayton Point plant. *Revised* Proposed Complaint, d/e 25-1 at 2 n.1.  The unpermitted modification claims related to Brayton Point in the Consent Decree, however, are completely different than the opacity and monitoring violations Fall River alleges in its proposed complaint.  Fall River provides no authority to show how the scope of the Consent Decree, which is permissibly broader than the scope of the United States' Complaint, expands this Court's power to hear unrelated allegations of violations at the Brayton Point plant in Massachusetts.  Therefore, sitting in Illinois, this Court does not have independent jurisdiction over Fall River's proposed complaint and will not permit Fall River to intervene.

Although Fall River emphasizes why the Motion to Intervene is timely in the memorandum supporting the Motion, the Court will

not address timeliness because Fall River cannot meet the other requirements of Fed. R. Civ. P. 24(a)(1) and (b)(1)(B).  See Fall River Memorandum, d/e 26 at 8-13.

In conclusion, Fall River lacks a statutory right to intervene under the CAA because the claims in the proposed complaint Fall River filed pursuant to Rule 24(c) differ from the claims the United States alleged in its Complaint in this case.  Accordingly, Fall River cannot intervene under Rule 24(a)(1).  Additionally, this Court will not allow Fall River to intervene under Rule 24(b) because Fall River cannot show a common question of law or fact or independent jurisdiction to pursue its claims in this Court.  The Court DENIES Fall River's *revised* Motion to Intervene (d/e 25) and DENIES AS MOOT Fall River's initial Motion to Intervene (d/e 13).  Fall River acknowledges that the Court's denial of the Motion to Intervene MOOTS the Motion for a Preliminary Injunction (d/e 15).  Therefore, the Court DENIES AS MOOT Fall River's Motion for a Preliminary Injunction (d/e 15).

**2. The Denial of the Motion to Intervene Moots the Motion to Enforce and/or Modify the Consent Decree, But Further Discussion is Warranted.**

In the Motion to Enforce/Modify the Consent Decree, Fall River asks this Court to enforce Dominion's compliance with the Consent Decree and modify the Consent Decree to allow the EPA to accept Fall River's proposal directly. Fall River Motion, d/e 17 at 5. Fall River concedes that the Court's denial of the Motion to Intervene moots the Motion to Enforce and/or Modify the Consent Decree. <u>See</u> Fall River Reply, d/e 41 at 2. This could be the end of the discussion on this Motion because the Court denied the Motion to Intervene. The lively dispute between Fall River and the Parties about the applicability of <u>Blue Chip Stamps v. Manor Drug Store</u>, 421 U.S. 723 (1975), however, compels further discussion.

This disagreement about <u>Blue Chip Stamps</u> arises from Fall River's assertion that Fall River can enforce and/or modify the Consent Decree as an intended beneficiary of the Consent Decree. In <u>Blue Chip Stamps</u>, the Supreme Court stated:

> [A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it.

<u>Id.</u> at 750.

The Parties and Fall River dispute the applicability of this holding from Blue Chip Stamps because after that case, the Seventh Circuit allowed an intended third-party beneficiary to intervene and enforce a consent decree without citing Blue Chip Stamps.  In South v. Rowe, 759 F.2d 610 (7th Cir. 1985), the Seventh Circuit found that an inmate was an intended beneficiary with a right to intervene under Rule 24(a)(2) and enforce a Consent Decree between a former inmate and the State of Illinois.  Fall River relies on Rowe for the proposition that an intended beneficiary could modify a Consent Decree and argues that Blue Chip Stamps only applied to private damages actions brought under the Securities and Exchange Commission's Rule 10b-5.  Fall River Reply, d/e 41 at 2-3.

The only other time the Seventh Circuit has referenced the holding in Blue Chip Stamps as prohibiting an intended beneficiary from modifying a consent decree was in a concurring opinion.  See Gautreaux v. Pierce, 707 F.2d 265 (7th Cir. 1983).  Although the majority in that case did not decide whether third parties could intervene and modify a consent decree, Judge Posner briefly acknowledged that Blue Chip Stamps bars third parties from

enforcing consent decrees.  Id. at 273 ("It might make a difference if the appellants were third-party beneficiaries of the decree, though there is authority that it would not, see Manor Drug Stores v. Blue Chip Stamps, 339 F. Supp. 35, 38 (C.D. Cal.1971), *rev'd on other grounds*, 492 F.2d 136 (9th Cir.1973), *rev'd on other grounds*, 421 U.S. 723 (1975).") (Posner, J., concurring).

Other circuits have more specifically ruled on the applicability of Blue Chip Stamps, complicating the dispute over this issue between the United States, Dominion, and Fall River.  In brief, the Second, Ninth, Tenth, and D.C. Circuits have narrowed Blue Chip Stamps to prohibit only *incidental* beneficiaries from enforcing non-governmental consent decrees.  See, e.g., Berger v. Heckler, 771 F.2d 1556, 1565 (2d Cir.1985) ("[W]e think that [Blue Chip Stamps] was not intended to preclude nonparties from intervening to enforce a consent decree where otherwise authorized by the federal rules of civil procedure."); Hook v. State of Ariz., Dep't of Corr., 972 F.2d 1012, 1014-15 (9th Cir. 1992)("The holding in Blue Chip Stamps is thus limited to incidental beneficiaries or beneficiaries of consent decrees where the government was the plaintiff; it does not apply to intended third party beneficiaries."); Floyd v. Ortiz, 300 F.3d 1223,

1226 (10th Cir. 2002) ("[I]ntended third-party beneficiaries of consent decrees have standing to enforce those decrees."); <u>Beckett v. Air Line Pilots Ass'n</u>, 995 F.2d 280, 288 (D.C. Cir. 1993) ("<u>Blue Chip Stamps</u> is best read as prohibiting, at most, suits to enforce consent decrees by incidental third party beneficiaries, or, perhaps, by third party beneficiaries of a consent decree obtained by the Government.").

However, with the exception of the Tenth Circuit, the circuits that have adopted this more narrow reading of <u>Blue Chip Stamps</u> require third parties to show that the consent decree they are seeking to enforce conferred not only a benefit, but enforcement power to the third-party beneficiary.  <u>See</u>, <u>e.g.</u>, <u>Consol. Edison, Inc. v. Ne. Utils.</u>, 426 F.3d 524, 528 (2d Cir. 2005) (rejecting the right of a third party to enforce a contract because "the parties to the Agreement clearly created a third-party right, but just as clearly they took pains to assure that the right was limited ... [and] not a right to sue"); <u>United States v. FMC Corp.</u>, 531 F.3d 813, 821 (9th Cir. 2008)(finding third party could not enforce a governmental consent decree when the decree "disclaim[ed] an intent to grant rights to third parties"); <u>SEC v. Prudential Secs., Inc.</u>, 136 F.3d 153,

159 (D.C. Cir. 1998) ("When a consent decree or contract explicitly provides that a third party is not to have enforcement rights, that third party is considered an incidental beneficiary even if the parties to the decree or contract intended to confer a direct benefit upon that party."); Hodges by Hodges v. Pub. Bldg. Comm'n of Chicago, 864 F. Supp. 1493, 1508 (N.D. Ill. 1994) ("[O]nly the Government can seek enforcement of its consent decrees; therefore, even if the Government intended its consent decree to benefit a third party, that party could not enforce it unless the decree so provided.") (relying on Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 288 (D.C. Cir.1993) (internal citations omitted); see also Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 958 (8th Cir. 2002) ("In order for a third party to be able to enforce a consent decree, the third party must, at a minimum, show that the parties to the consent decree not only intended to confer a benefit upon that third party, but also intended to give that third party a legally binding and enforceable right to that benefit.").

The Ninth Circuit observed that when applying the narrow reading of Blue Chip Stamps to a consent decree to which the government is a party, courts can view Blue Chip Stamps and its

progeny in two ways: either third-party beneficiaries *never* have standing to enforce governmental consent decrees unless the consent decree specifically says they do, or third-party beneficiaries are presumed to be *incidental* unless the consent decree clearly makes them *intended* beneficiaries.  <u>FMC Corp.</u>, 531 F.3d at 821. Either way, the court's decision turns on whether the consent decree contains language that shows the parties' intention to give third parties enforcement power.  Therefore, even if the Seventh Circuit chose to adopt the narrower reading of <u>Blue Chip Stamps</u>, this Court should still look to the language of the Consent Decree to determine whether the Parties, one of which is the government, conferred enforcement power to third parties like Fall River.  <u>See</u>, <u>e.g.</u>, <u>Dunn v. Carey</u>, 808 F.2d 555, 559 (7th Cir. 1986) ("Consent decrees are judgments as well as contracts."); <u>Golden v. Barenborg</u>, 53 F.3d 866, 870 (7th Cir. 1995) (relying on "the manifestation of the parties' intent expressed through the language of the contract" to determine whether a third party is an intended or incidental beneficiary under Illinois law).

Three provisions of the Consent Decree demonstrate the intent of the United States and Dominion not to include but to explicitly

exclude, third parties from enforcing or modifying the Consent Decree. Paragraph 187 grants the power to enforce the Consent Decree only to "any Party to this Consent Decree." Consent Decree, d/e 6 ¶ 187. Permitted modifications to the Consent Decree can be made only "by a subsequent written agreement signed by the Parties." Id. ¶ 188. And to further ensure that third parties did not interfere, paragraph 198 states: "This Consent Decree does not limit, enlarge, or affect the rights of any Party to this Consent Decree against third parties." Id. ¶ 198. Accordingly, under Blue Chip Stamps and its progeny and general principles of contract law, Fall River cannot modify or enforce the Consent Decree as an intended beneficiary.

Furthermore, the denial of the Motion to Intervene moots Fall River's Motion to Enforce and/or Modify the Consent Decree as a party as well as Fall River's argument that Fall River can seek modification under Federal Rule of Civil Procedure 60. Nat'l Acceptance Co. of Am., Inc. v. Frigidmeats, Inc., 627 F.2d 764, 766 (7th Cir. 1980) ("'[I]t is well-settled that . . . one who was not a party lacks standing to make a (60(b) motion.'") (citing 11 C. Wright & A. Miller, Federal Practice and Procedure s 2865 at 225–26 (1973)); see

also <u>United States v. 8136 S. Dobson St., Chicago, Ill.</u>, 125 F.3d 1076, 1082 (7th Cir. 1997) ("The person seeking relief [under Fed. R. Civ. P. 60] must have been a party."). Therefore, the Court DENIES Fall River's Motion to Modify and/or Enforce the Consent Decree.

### 3. The Court Denies Dominion's Motion for Sanctions and Fall River's Request for Expenses.

On March 7, 2014, Dominion filed a Motion for Sanctions (d/e 38) under Federal Rule of Civil Procedure 11 with an accompanying 18-page memorandum (d/e 39). Dominion asserts that Fall River failed to conduct a reasonable pre-filing inquiry into whether Fall River's legal arguments were supported by existing law and whether Fall River had evidentiary support for its factual contentions. <u>See</u> Dominion Memorandum, d/e 39 at 18. Rule 11(b) requires an attorney to certify that the claims, defenses, and legal contentions she submits to the court are warranted by existing law or by a nonfrivolous argument to extend, modify or reverse existing law, or establish new law. The belief on which this certification is based is formed after a reasonable investigation or inquiry. FED. R. CIV. P. 11(b).

Advisory Committee Notes to Rule 11 advise that a "reasonable inquiry" may depend on a variety of factors, including the time available for an investigation and whether counsel had to rely on a client for information. FED. R. CIV. P. 11 advisory committee's note to amend. 1983. The district court has discretion to impose sanctions when submissions are filed for an improper purpose or without a reasonable investigation of the facts and law. Gay v. Chandra, 682 F.3d 590, 596 (7th Cir. 2012). Courts must also consider whether sanctions would further the purpose of Rule 11, which is to deter comparable conduct by similarly situated attorneys. FED. R. CIV. P. 11(c)(4). Sanctions are appropriate when the court finds that an attorney should have known her position was "groundless." Cuna Mut. Ins. Soc'y Office and Prof'l Emps. Int'l Union, Local 39, 443 F.3d 556, 560 (7th Cir. 2006).

Dominion asserts that Fall River's filings are "baseless, are not warranted by existing law, and contain false allegations." Dominion Memorandum, d/e 39 at 1–2. In support of the Motion for Sanctions, Dominion discusses Fall River's failure to cite Blue Chip Stamps when Fall River was seeking to modify and/or enforce the Consent Decree as a third-party beneficiary. Id. at 12–14.

Dominion also argues that Fall River's failure to recognize that this Court did not have jurisdiction over Fall River's proposed complaint is another reason sanctions are warranted.  Id. at 14–18. Additionally, Dominion highlights Fall River's ignorance of the Consent Decree provisions regarding third parties.  Dominion Motion, d/e 38, ¶ 6.

In response, Fall River asserts once again that Fall River has an unconditional right to intervene under the CAA and that South v. Rowe, the Seventh Circuit case that allowed a third-party to intervene and enforce a consent decree, trumps any applicability of Blue Chips Stamps to this case.  Fall River Response, d/e 45 at 4–8.  Fall River also contends that this Court has jurisdiction because Brayton Point Station is a defendant in this case and a defendant in the Consent Decree, and the Consent Decree disposes of the United States' claims against the Brayton Point Station.  Id. at 8–10.  Fall River also asks for attorney's fees and costs in responding to the Motion for Sanction.  Id. at 11–15; see FED. R. CIV. P. 11(c)(2) (stating that the court may award reasonable expenses, including attorney's fees and costs, to the prevailing party of a motion for sanctions).

Although some of Fall River's assertions are problematic—such as Fall River's claim that the parties "acknowledge" that <u>Blue Chip Stamps</u> is limited to securities' actions or that this Court has jurisdiction over Fall River's proposed complaint—Fall River's submissions do not warrant sanctions. Fall River's failure to cite <u>Blue Chip Stamps</u> does not justify the harsh penalty of sanctions. <u>See</u> <u>Thompson v. Duke</u>, 940 F.2d 192, 198 (7th Cir. 1991) ("[O]mission of a citation that arguably does not control, while imprudent and unprofessional, is not, standing alone, a basis for sanctions"). Additionally, when confronted with <u>Blue Chip Stamps</u> in the United States' and Dominion's responses to Fall River's Motion to Intervene, Fall River addressed the case and conceded that if Fall River could not intervene, Fall River could not enforce or modify the Consent Decree. <u>See</u> Fall River Reply, d/e 41 at 2.

Therefore, the Court DENIES Dominion's Motion for Sanctions (d/e 38) and Fall River's request for expenses and attorney's fees under Rule 11.

### III.  CONCLUSION

**The Court DENIES Fall River's *revised* Motion to Intervene (d/e 25) because Fall River does not have a statutory right to**

intervene under the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B), and cannot meet the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b).  Therefore, the Motion to Enforce and/or Modify the Consent Decree (d/e 17), the Motion for a Temporary Restraining Order and/or Preliminary Injunction (d/e 15), and the initial Motion to Intervene (d/e 13) are DENIED AS MOOT.  Finally, the Court DENIES Dominion's Motion for Sanctions (d/e 38) after finding that sanctions are not warranted.

ENTERED: April 15, 2014

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
United States District Court Judge